UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-06470-KK-Ex** | Date: | November 9, 2026 |
| Title: | ***Michael Eniola Balogun v. David J. Venturella, et al.*** | | |

| | |
|---|---|
| Present: The Honorable | KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order GRANTING Petitioner's Motion for a Preliminary Injunction [Dkt. 2]**

## I.
## INTRODUCTION

On October 31, 2026, petitioner Michael Eniola Balogun, A# 214-229-169 ("Petitioner"), who is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents David J. Venturella, Marcos Charles, Does 1 and 2, Markwayne Mullin, and Todd Blanche (collectively, "Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed an Ex Parte Application for a Temporary Restraining Order, which the Court converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 2, Motion ("Mot."); Dkt. 8.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II.
## BACKGROUND

### A. RELEVANT FACTS

Petitioner is a 27-year-old citizen and national of South Africa. Pet. ¶¶ 1, 19. On July 10, 2015, Petitioner was lawfully admitted to the United States on a B-2 nonimmigrant visa. Id. ¶ 20. Since then, Petitioner has lived and worked in the United States. Id. ¶¶ 1, 20, 24. He is currently

employed as an IT consultant for an American company. Id. ¶ 24. He has no criminal history. Id. ¶ 25; see also Dkt. 10-1, Form I-213 at 3.

On July 31, 2019, Petitioner married his wife. Dkt. 1-4, Pet. Ex. 4. Petitioner and his wife have two U.S. citizen children together, who are five and seven years old. Pet. ¶ 21. One of their children has autism and "exhibit[s] some separation anxiety and becomes upset when left alone." Id. ¶ 22.

In approximately October 2019, Petitioner's wife filed a Form I-130, Petition for Alien Relative, and Form I-485, Application to Register Permanent Residence or Adjust Status ("Immigration Applications"), with the United States Citizenship and Immigration Services ("USCIS") on Petitioner's behalf. Reply at 3. On August 19, 2026, USCIS denied the Immigration Applications. Id.; Pet ¶ 23.

On October 29, 2026, while preparing to board a domestic flight to Arkansas for a work trip, Petitioner was arrested and detained by ICE agents at Los Angeles International Airport. Pet. ¶ 26. He was not presented with a warrant for his arrest, informed of the reason for his arrest or detention, or told whether, or how, he could challenge the decision to detain him. Id. ¶ 27. After his arrest, he was transported to a temporary holding facility and then to Adelanto ICE Processing Center, where he remains today. Id. ¶ 29.

## B. PROCEDURAL HISTORY

On October 31, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

> **Ground One:** Detention Without Statutory Authority in violation of 8 U.S.C. §§ 1226(a), 1357(a)(2); 8 C.F.R. § 287.8(c)(2); and 28 U.S.C. § 2241(c)(3);
>
> **Ground Two:** Violation of Procedural Due Process – Fifth Amendment ("Procedural Due Process Claim");
>
> **Ground Three:** Violation of Substantive Due Process – Fifth Amendment; and
>
> **Ground Four:** Unlawful Application of 8 U.S.C. § 1225.

Id. ¶¶ 40-63.

On the same day, Petitioner filed an Ex Parte Application for Temporary Restraining Order, seeking, among other relief, an order requiring his immediate release from Respondents' custody and enjoining his re-detention while the action is pending. Mot. at 14.

On November 3, 2026, the Court converted the Ex Parte Motion for Temporary Restraining Order to the instant Motion, ordered Respondents to submit an Opposition within one day, and ordered Petitioner to submit a Reply within four days setting forth additional details about his Immigration Applications. Dkt. 8.

On November 4, 2026, Respondents filed an Opposition to the Motion and Answer to the Petition, arguing Petitioner has not gained a vested liberty interest, is entitled only to an initial bond hearing, and failed to exhaust administrative remedies. Dkt. 10, Opposition ("Opp.") at 2-3.

On November 7, 2026, Petitioner filed his Reply. Dkt. 11, Reply.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See Id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, . . . known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other Winter factors are also met. Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

### A. THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, Petitioner is likely to succeed on the merits of his claim that his detention without advance notice and a pre-deprivation hearing violated his right to procedural due process.[1]

#### 1. Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690

[1] Because the Court finds Petitioner is entitled to relief based on this claim, the Court declines to consider Petitioner's other claims.

(2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, "the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

**2. Analysis**

As an initial matter, the Court finds exhaustion of administrative remedies is not warranted. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). However, a court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation modified).

Here, administrative remedies would be "inadequate and futile," as a post-deprivation bond hearing "would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest." R.N.G. v. Semaia, No. EDCV 26-02839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026). Additionally, Petitioner would "suffer significant irreparable harm" in the form of continued detention "if forced to wait for an administrative appeal to be decided." Villa v. Mullin, No. EDCV 26-01690-JDE, 2026 WL 1583941, at *4 (C.D. Cal. June 2, 2026). For the same reason, the alternative remedy of a post-deprivation bond hearing is also inadequate to redress Petitioner's due process challenge to his detention without adequate notice and a pre-deprivation hearing. See Gudavasov v. Marin, No. EDCV 26-00541-AH-MBKx, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing"). Accordingly, the Court exercises its discretion to waive the prudential exhaustion requirement for Petitioner.

Turning to the merits, the Court finds Petitioner is likely to succeed on the merits of his claim that his detention without notice and a pre-deprivation hearing violated his right to procedural due process under the Mathews test.

First, Petitioner has a substantial private interest in remaining out of immigration custody. Petitioner lawfully entered the United States in 2015 on a B-2 nonimmigrant visa, married his wife in August 2019, and filed his Immigration Applications in October 2019. Reply at 3. Records from United States Customs and Border Protection show Petitioner's B-2 nonimmigrant visa expired on January 9, 2016. Dkt. 1-2. Thus, when Petitioner and his wife filed his Immigration Applications in October 2019, Petitioner knowingly and intentionally alerted Respondents to his presence in the country, yet Respondents "made a decision not to detain [him]" during the pendency of his applications. Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026). Hence, nearly seven years, Respondents, with "full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." Zhou v. Janecka, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, see 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed Petitioner's Immigration Applications. Zhou, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Petitioner relied on this liberty interest to live freely "with family and friends and to form the other enduring attachments of normal life," such as raising two young children with his wife and maintaining steady employment as an IT consultant. Morrissey, 408 U.S. at 482. The length of Petitioner's freedom pending the adjudication of his Immigration Applications thus only strengthens his interest in his continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Accordingly, Petitioner establishes a significant private interest.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Here, the government permitted Petitioner to live openly for almost seven years after he filed his Immigration Applications. See Reply at 3. Additionally, Petitioner maintained a clear criminal record. Pet. ¶¶ 1, 25; Form I-213 at 3. The evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing

evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of [his] liberty, 'the risk of an erroneous deprivation of liberty is high.'" Zhou, 2026 WL 2365550, at *6 (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could simply detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. In their Opposition, the only justification Respondents offer for Petitioner's detention is his visa overstay. Opp. at 2. However, it is undisputed Respondents were aware of Petitioner's likely, if not actual, overstay of his visa since at least October 2019, after his Immigration Applications were filed. See Reply at 3. Respondents do not identify any material change in circumstances justifying Petitioner's detention. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact "the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (noting government has power to re-arrest petitioner at any point "but its interest in doing so without a hearing is low").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. Additionally, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh, 803 F. Supp. 3d at 1048). Indeed, Respondents' delay in arresting Petitioner for nearly seven years after notice of his visa overstay only confirms "a pre-deprivation hearing was entirely feasible and required." Galeano-Ariza v. Warden, No. EDCV 26-04081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). Hence, Respondents' interest in detaining Petitioner without a pre-detention hearing is low.

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his detention without notice and a pre-deprivation hearing violated his right to procedural due process. Accordingly, the first Winter factor weighs in favor of Petitioner.

## B. THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002). If a plaintiff establishes a likelihood of success on a claim alleging a constitutional violation, "that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023). Further, "[d]eprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, Petitioner's detention without notice or a pre-deprivation hearing violated his right to procedural due process. Hence, Petitioner will be irreparably harmed absent relief from this Court. See, e.g., Guillermo M. R., 791 F. Supp. 3d at 1037 (finding irreparable harm where the petitioner would be "detained and . . . not . . . entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

## C. BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the Immigration and Nationality Act).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. In addition, Respondents do not assert any convincing governmental interest in detaining Petitioner as part of their law enforcement obligations. See generally Opp. Even so, such arguments would not be persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

* * *

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to injunctive relief in the form of his immediate release. Petitioner's release is necessary to maintain the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, the last uncontested status is Petitioner's freedom from immigration custody pending the final resolution of his Immigration Applications. See J.A.E.M., 812 F. Supp. 3d at 1072 ("Petitioner's immediate release is required to return him to the status quo ante – 'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025))); cf. Pet. ¶ 23 (stating Petitioner and his wife plan to re-file the Form I-130). Accordingly, Petitioner's immediate release is the appropriate form of relief. See Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Motion is **GRANTED**;[2]
2. Respondents are **ORDERED TO IMMEDIATELY RELEASE** Petitioner Michael Eniola Balogun (A# 214-229-169) from their custody;
3. Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4. Respondents are **ENJOINED** from re-detaining Petitioner pursuant to 8 U.S.C. § 1226 without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
5. Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case;
6. Respondents are **ORDERED** to file a status report **no later than three (3) days from the date of this Order,** regarding their compliance with this Order; and

---

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

7. Within seven (7) days from the date of this Order, the parties shall file a stipulated order and judgment granting the Petition on the same grounds and under the same terms as this Order, with all appellate rights reserved. **If for any reason the parties cannot comply with this instruction, the parties shall file a joint status report no later than seven (7) days from the date of this Order explaining why.**

This Order shall remain in effect until further order by the Court. Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.